UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES HEAD,<br><br>    Petitioner,<br><br> v.<br><br>WARDEN, FCI MENDOTA,<br><br>    Respondent. | No. 1:22-cv-01512-HBK (HC)<br><br>OPINION AND ORDER GRANTING RESPONDENT'S MOTION TO DISMISS[1]<br><br>(Doc. No. 10) |

Petitioner Charles Head ("Petitioner"), a federal inmate, initiated this action on November 22, 2022 by filing a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241, while he was incarcerated at Federal Correctional Institution (FCI) Mendota, located in Fresno County, California, which is within the venue and jurisdiction of this Court. (Doc. No. 1, "Petition"). The Petition raises two claims: (1) the Bureau of Prisons (BOP) policy violated the First Step Act of 2018 because it prevented him from earning federal time credits ("FTCs") for participating in evidence-based recidivism reduction programs of his own choosing that were not recommended for him under the PATTERN system; and (2) BOP policy violates the First Step Act of 2018 by excluding him from earning FTCs while he chose to "opt out" of the Inmate Financial Responsibility Program ("IFRP"). (Doc. No. 1 at 6, 10-13); *see* 18 U.S.C. § 3632(d)(4)(A), (C)

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. § 636(c)(1). (Doc. No. 9).

1

1  (providing that FTCs earned from completion of evidence-based recidivism reduction programs
2  (EBBRs) and productive activities (PAs) shall be applied toward time in prerelease custody or
3  supervised release). Petitioner provides no specific number of FTCs to which he is entitled;
4  rather, he asks the Court to "enjoin" the BOP to comply with the First Step Act by (1) permitting
5  eligible inmates to earn FTCs for any EBRR or PA program they choose, and (2) compelling the
6  BOP to allow him to earn FTCs regardless of whether he has "opted out" as defined by BOP
7  policy "(i.e. by being in [IFRP] refusal status)." (Doc. No. 1 at 7). Petitioner admits he did not
8  exhaust his administrative remedies and argues exhaustion is futile because he is challenging a
9  policy. (*Id*. at 7).

10  In response, Respondent filed a Motion to Dismiss with Appendix on February 10, 2023.
11  (Doc. Nos. 10, 10-1). Respondent seeks dismissal of Petition because this Court lacks statutory
12  authority under § 2241 to compel discretionary action via declaratory and advisory opinions, and
13  because Petitioner failed to exhaust his administrative remedies. (Doc. No. 8 at 2). Moreover,
14  Respondent argues "Petitioner's demand that this Court legislate and manage BOP's discretionary
15  authority generally, and particularly for Petitioner, is without legal merit," and that Petitioner
16  improperly demands this Court to "accommodate his violation of district court judgment and
17  commitment orders regarding restitution payments (and to facilitate his refusal to participate in
18  BOP's IFRP to aid in district court restitution order compliance)." (*Id*.). On March 1, 2023,
19  Petitioner filed a "Supplement" to the Petition, and on July 7, 2023 he filed a "Motion for Status
20  and Notice of Change of Address." (Doc. Nos. 11, 13). On August 16, 2023, the Court entered
21  an order striking the "Supplement" as procedurally deficient, and granting Petitioner leave to file
22  a first amended petition or respond to the pending Motion to Dismiss. (Doc. No. 14). Petitioner
23  did not file a first amended petition or a response to the Motion to Dismiss, and the time for doing
24  so has expired. (*See* Doc. No. 14, advising Petitioner that he could deliver either a first amended
25  petition or a response to the pending Motion by September 1, 2023). For the reasons set forth
26  more fully herein, the Court grants Respondent's Motion to Dismiss.
27  ////
28  ////

# I. BACKGROUND

## A. Procedural History

In 2013, a jury convicted Petitioner of multiple counts of mail fraud in violation of 18 U.S.C. § 1341, and conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349, in two related criminal cases. Petitioner is currently serving an aggregated 420-month sentence imposed by the United States District Court for the Eastern District of California. *See United States v. Head et al.*, 2:08-cr-00093-KJM, Crim. Doc. Nos. 773, 983 (E.D. Cal.), *United States v. Head et. al.*, 2:08-cr-00116-KJM, Crim. Doc. Nos. 463, 583 (E.D. Cal.).[2] At the time he filed the Petition, Petitioner was incarcerated at FCI Mendota. (Doc. No. 10-1 at 3); *(see also* Doc. No. 12 (notice of Petitioner's change of address to FCI Englewood in Littleton, Colorado). Petitioner's current projected release date, including adjustments for possible good time credits is February 14, 2041. (Doc. No. 10-1 at 3, 14). He has earned 175 FTCs toward RRC or home confinement and 365 FTCs toward early supervised release; however, he is ineligible to apply time credits as he has an unresolved pending charge. (*Id*. at 9, 28).

# II. APPLICABLE LAW AND ANALYSIS

Under Rule 4, if a petition is not dismissed at screening, the judge "must order the respondent to file an answer, motion, or other response" to the petition. R. Governing 2254 Cases 4. The Advisory Committee Notes to Rule 4 state that "the judge may want to authorize the respondent to make a motion to dismiss based upon information furnished by respondent." A motion to dismiss a petition for writ of habeas corpus is construed as a request for the court to dismiss under Rule 4 of the Rules Governing Section 2254 Cases. *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990). Under Rule 4, a district court must dismiss a habeas petition if it "plainly appears" that the petitioner is not entitled to relief. *See Valdez v. Montgomery*, 918 F.3d 687, 693 (9th Cir. 2019); *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).

## A. Failure to Exhaust Administrative Remedies

"Federal prisoners [generally] are required to exhaust their federal administrative

---

[2] The undersigned cites to the record in Petitioner's underlying EDCA criminal case as "Crim. Doc. No. _.".

1  remedies prior to bringing a petition for a writ of habeas corpus in federal court." *Martinez v.*
2  *Roberts*, 804 F.2d 570, 571 (9th Cir. 1986); *see also Ward v. Chavez*, 678 F.3d 1042 (9th Cir.
3  2012).  However, the requirement that federal prisoners exhaust administrative remedies before
4  filing a habeas corpus petition was judicially created; it is not a statutory requirement.  *Brown v.*
5  *Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S.
6  50, 54-55 (1995).  Because exhaustion is not required by statute, it is not jurisdictional.  *Id*. (citing
7  *Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1223 (9th Cir. 1987)).  If
8  petitioner has not properly exhausted his claims, the district court, in its discretion, may
9  "determine whether to excuse the faulty exhaustion and reach the merits or require the petitioner
10 to exhaust his administrative remedies before proceeding in court."  *Id*.
11      Requiring a petitioner to exhaust administrative remedies (1) aids judicial review "by
12 allowing the appropriate development of a factual record in an expert forum," (2) conserves "the
13 court's time because of the possibility that the relief applied for may be granted at the
14 administrative level," and (3) allows "the administrative agency an opportunity to correct errors
15 occurring in the course of administrative proceedings."  *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th
16 Cir. 1983) (per curiam).  Dismissal is appropriate when a federal prisoner has not exhausted the
17 administrative remedies made available by the BOP.  *See Quinonez v. McGrew*, 649 F. App'x 475
18 (9th Cir. 2016) (affirming district court's dismissal of a § 2241 petition where the petitioner "did
19 not complete any level of the BOP's Administrative Remedy Program and there is no indication
20 that his pursuit of those remedies would be futile").  However, the Court may waive the
21 exhaustion requirement when administrative remedies are inadequate, irreparable injury may
22 occur without immediate judicial relief, or exhaustion otherwise would be futile.  *Laing v.*
23 *Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004) ("[D]istrict court's habeas jurisdiction under 28
24 U.S.C. § 2241 is ordinarily reserved for instances in which no other judicial remedy is
25 available.").
26      When seeking administrative remedies, an inmate must first attempt informal resolution
27 (BP-8).  28 C.F.R. § 542.13.  Thereafter, the BOP makes available a formal three-level
28 Administrative Remedy Program: (1) a Request for Administrative Remedy (BP-9) filed at the

1   institution where the inmate is incarcerated; (2) a Regional Administrative Remedy Appeal (BP-
2   10) filed at the Regional Office for the geographic region in which the inmate's institution is
3   located; and (3) a Central Office Administrative Remedy Appeal (BP-11) filed with the Office of
4   General Counsel.  28 C.F.R. § 542.10 et seq.
5       Here, Petitioner concedes that he did not present either of his two grounds for relief at any
6   level because he is challenging a BOP policy, and therefore any appeal would be futile.  (Doc.
7   No. 1 at 7).  However, the Petition also makes assertions regarding the accrual, or lack thereof, of
8   FTCs for Petitioner's own participation in classes of his choosing, including the "Threshold
9   program" and paralegal course listed in his Petition, and the restriction on earning FTCs for
10  programs Petitioner himself "opts out" of participating in, such as the IFRP.  (Doc. No. 1 at 6).
11  Therefore, Petitioner does not solely challenge a matter of policy.  As argued by Respondent,
12  "[f]or petitions challenging BOP individualized sentence calculations and offsets (projected and
13  or [sic] earned), enforcing exhaustion requirements is essential at least to allow the administrative
14  agency to develop a factual record, apply its expertise, and correct its own errors, thereby
15  conserving court resources and avoiding unnecessary judicial intervention."  (Doc. No. 10 at 4
16  (citing *Ruviwat*, 701 F.2d at 845)).  The Court further notes that district courts in the Ninth Circuit
17  have declined to waive exhaustion where petitioner made claims of futility in the context of
18  earned time credits under the FSA.  *See, e.g., Jones v. Thompson*, 2021 WL 5397711, at *2 (Nov.
19  18, 2021) (noting district courts in this circuit "to consider the exhaustion issue as it applies to
20  similar claims for earned time credits under the First Step Act have declined to waive
21  exhaustion"); *Baldovinos-Molina v. Birkholz*, 2023 WL 4373306, at *2 (C.D. Cal. May 16, 2023)
22  (collecting cases and noting that "excusal of the exhaustion requirement as to petitioner may
23  encourage others similarly situated to bypass the requirement").
24      This Court finds an assessment of whether Petitioner was entitled to accrue FTCs under
25  the FSA for his "chosen" programming, and whether he is entitled to earn FTCs for programs he
26  "opts out" of, should be undertaken by the agency in the first instance.  Thus, the exhaustion
27  requirement cannot be excused in this case.  Thus, the Petition is subject to dismissal because
28  neither ground is exhausted.

5

**B. BOP Policy**

The First Step Act (FSA), enacted December 21, 2018, provided for considerable changes to the federal criminal code, including several prison and sentencing reforms. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). One such reform under the First Time Act entailed the implementation of Federal Time Credits (FTCs). 18 U.S.C. § 3632(d)(4)(A). Essentially, an inmate "who successfully completed evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation." *Id*. These FTCs earned by eligible inmates are "applied toward time in prerelease custody or supervised release." *Id.*

The FSA additionally authorized the BOP to use a risk and needs assessment system, "PATTERN," to designate a prisoner with a minimum, low, medium, or high-risk score. *United States v. DeCaro,* No. 2022 WL 4395905, at *1 n.1 (E.D. Mo. Aug. 23, 2022). Inmates who receive a minimum or low-risk score over two consecutive assessments earn an additional five days of time credits for every 30 days of successful participation in evidence-based recidivism reduction (EBBR) programming or productive activities (PA). 18 U.S.C. § 3632(d)(4)(A)(ii); *Orihuela v. Engleman*, 2022 WL 18106676, at *1 (C.D. Ca. Nov. 3, 2022) ("A prisoner's PATTERN score may affect the rate at which he earns FTC for his participation in EBRRs and Pas.").

Inmates may begin earning FTCs once their term begins, but an inmate cannot earn FTCs for programming or activities for EBBR programing or PA in which he or she participated in *prior to the enactment of the FSA* on December 21, 2018. 28 C.F.R. § 523.42. An inmate, however, can earn retroactive application of FTCs for EBRR programming or PAs in which he or she participated in from December 21, 2018, to January 13, 2022. *Id*.

Petitioner argues that BOP policy, specifically BOP Program Statement 5410.01, "unlawfully restricts" him from (1) earning FTCs under the First Step Act for participating in programs not recommended under the PATTERN system, and (2) earning FTCs under the First Step Act when he "opts out" of participation in programs such as the IFRP. (Doc. No. 1 at 6). Petitioner asks the Court to "enjoin" the BOP to comply with the First Step Act by allowing

inmates to earn FTCs for any EBRR or PA program of their choosing, and "compel" the BOP to allow Petitioner to earn FTCs regardless of whether he has "opted out" "as defined by BOP policy (i.e. by being in [IFRP] refusal status)." (*Id*. at 7). In support of this argument, Petitioner filed a declaration stating he has been participating in the "Threshold Program" and he earned a paralegal certificate in October 2022, but he was informed by his case manager that he did not receive FTCs for these programs because they were not recommended for him "via the PATTERN system." (*Id*. at 15-16). Petitioner also notes that he would be placed on "refusal status" if he did not participate in the IFRP, but "[n]owhere does the FSA mention 'opting out' or the requirement that an inmate pay restitution under the BOP [IFRP] program in order to receive [FTCs]." (*Id*. at 11).

A district court has jurisdiction to review claims alleging that BOP undertook action that is contrary to established federal law, violates the U.S. Constitution, or exceeds its statutory authority vested in the agency by Congress. *Moon v. Thomas*, 787 F. Supp. 2d 1154, 1160 (D. Or. Apr. 1, 2011); *Reeb v. Thomas*, 636 F.3d 1224, 1228 (9th Cir. 2011) (finding that while judicial review is available for BOP actions contrary to federal law or in violation of the Constitution, or claims the BOP exceeds statutory authority, federal courts lack jurisdiction to review BOP's individualized determinations made pursuant to 18 U.S.C. § 3632).

Here, Petitioner cites to no portion of the FSA to support his argument that he is entitled under the statute to "choose" the EBRR programming and PAs that would qualify to earn FTCs, or that he is entitled to earn FTCs regardless of refusal to participate in certain programs. To the contrary, 18 U.S.C. § 3632 mandates that the Attorney General, through the BOP and with other agencies and entities, develop a "risk and needs assessment system" that, in relevant part, "determine[s] the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs." 18 U.S.C. § 3632(a)(3), (b). Further, in 2022 the BOP promulgated regulations for determining "successful participation" in EBRR programming or PAs that requires "a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that BOP has recommended based on the inmate's

individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA." (Doc. No. 10 at 6 (citing 28 C.F.R. § 523.41(c)(2)); (*see also* Doc. No. 10-1 at 7-8 (citing BOP Program Statement 5410.01 at 11) ("While [EBRR programs or PAs] are voluntary, the refusal to participate can result in the loss of certain benefits including the inability to earn FTCs.")).

As correctly pointed out by Respondent, Petitioner's claim that BOP action is contrary to the FSA because he is restricted from earning FTCs for participating in programs of his choosing not recommended under the PATTERN system, and restricted from earning FTCs if he opts out of certain programs such as the IFRP, is without merit because "[i]t is entirely appropriate, as sanctioned by the FSA and the applicable CFR, for the BOP to limit ability to earn time credits, including for factors such as an inmates refusal to participate in IFRP (the Inmate Financial Responsibility Program), which may also be in violation of district court orders (e.g., the court-of-conviction judgment and commitment order)." (Doc. No. 10 at 6). Thus, even if the Court were to waive the exhaustion requirement, Petitioner's claims nonetheless are without merit.

Accordingly, it is **ORDERED**:

1. Respondent's Motion to Dismiss (Doc. No. 10) is GRANTED.

2. The Petition is DISMISSED as unexhausted and otherwise without merit.

3. The Clerk of Court is directed to terminate any pending motions and close this case.

Dated:   September 28, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

8